IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN J. PARRISH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-59-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Carolyn Parrish seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should reverse and remand for further proceedings.

BACKGROUND

Ms. Parrish applied for supplemental security income and widow's insurance benefits based on an alleged disability. Administrative Record at pp. 81-82 (certified Mar. 8, 2008) ("Rec."). The SSA denied the applications,[1] and the present action followed. Ms. Parrish's claims include error in the consideration of x-ray results, physical therapy records, and reports by two examining physicians.[2]

---

[1]     Rec. at pp. 5-7, 18-26.

[2]     Ms. Parrish also argues that the administrative law judge had incorrectly concluded that her hypertension and pain were controlled with medication and physical therapy. The Court need not consider these arguments in light of the need for reversal on other grounds.

STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). In this circuit, the SSA must follow specific rules when weighing the evidence, and departure from these rules constitutes reversible error. *See Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).[3] When the record does not clearly reflect whether the administrative law judge had considered all of the evidence, the Court must reverse and remand.[4]

ERRORS AFFECTING THE DENIAL OF SUPPLEMENTAL
SECURITY INCOME AND WIDOW'S INSURANCE BENEFITS:
CONSIDERATION OF MEDICAL EVIDENCE

For both types of disability benefits, supplemental security income and widow's insurance payments, the administrative law judge erred in his failure to discuss post-hearing x-ray results and opinions by two examining physicians.

I.   POST-HEARING X-RAY RESULTS

At the hearing, the judge stated that he would keep the record open for two weeks to receive additional evidence related to Ms. Parrish's scoliosis. Rec. at pp. 293, 320-21. One

---

[3]   There the court stated: "There are specific rules of law that must be followed in weighing particular types of evidence in disability cases. Failure to follow these rules constitutes reversible error." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988) (citations omitted).

[4]   *See Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("Where the record on appeal is unclear as to whether the [administrative law judge] applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand." (citation omitted)).

day before the deadline, the Plaintiff submitted an x-ray of the cervical spine,[5] which stated: "There is narrowing of the C5-C6 interspace, with retrolisthesis of C5 on C6. There is anterior and posterior osteophytic lipping at this level, consistent with possible spinal stenosis." *Id.* at p. 283.

The Commissioner concedes the absence of any indication by the administrative law judge to suggest that he had considered the post-hearing x-ray results. *See* Brief in Support of the Commissioner's Decision at p. 6 (Sept. 19, 2008) ("There is no indication that the [administrative law judge] received and reviewed the 2007 x-ray results.").[6] The concession is fatal, as the administrative law judge incurred a duty to consider all of the medical evidence submitted while the record had remained open. *See Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) (requiring reversal when the record was unclear whether the administrative law judge had considered x-rays indicating degenerative changes in the plaintiff's spine).

The Tenth Circuit Court of Appeals recently addressed a similar issue in *Hulsey v. Astrue*, 280 Fed. Appx. 756 (10th Cir. June 4, 2008) (unpublished op.). There the plaintiff submitted a physician's medical source statement after the hearing. *See Hulsey v. Astrue*, 280 Fed. Appx. at 759. The statement reflected limitations that exceeded those in the

---

[5]   *See* Rec. at p. 282.

[6]   In the decision, the administrative law judge acknowledged the existence of two x-rays, which had been noted by a consultative examiner in August 2004. Rec. at p. 22, *see also id.* at p. 237. No other x-ray results were mentioned in the decision.

administrative law judge's assessment of residual functional capacity ("RFC"). *See id*. at 757, 759. The Tenth Circuit Court of Appeals reversed based on its inability to determine whether the administrative law judge was aware of the written statement or had considered it. *Id*. at 759-60. In doing so, the appeals court relied on the lack of any reference in the decision to the medical source statement. *Id*.

The Tenth Circuit's recent decision is persuasive in light of the similarity in facts. Here too the administrative law judge never mentioned the post-hearing x-ray results. *See* Rec. at pp. 18-24. Indeed, the Appeals Council added the x-ray results to the record under the apparent belief that they had not been included when the administrative law judge rendered a decision. *See id.* at p. 8 ("The Appeals Council has received additional evidence [consisting of exhibits including the x-ray results from February 2007] which it is making part of the record."). And, as noted above, the Commissioner admits the absence of any indication that the administrative law judge was even aware of the x-ray results. *See supra* p. 3. Under *Hulsey v. Astrue*, this concession requires the Court to find legal error in the decision.

The only real issue is whether the error was harmless. The Commissioner argues that the omission was immaterial because:

- the Appeals Council ultimately decided not to change the outcome based on the x-ray results and

- the Plaintiff has not shown how the result could have changed with consideration of the x-ray results.

Both arguments are invalid.

An administrative law judge's error can be considered harmless only when the Court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The Appeals Council did not consider the Plaintiff's claim *de novo*. Instead, the Appeals Council acted as an appellate forum, engaging in limited review. *See* 20 C.F.R. § 404.970 (2006). This entity was to review the outcome only if a broad issue could have affected the general public interest or the administrative law judge had abused his discretion, committed an error of law, or made findings that lacked substantial evidence. *See* 20 C.F.R. § 494.970(b) (2006).

The present issue is what the administrative law judge might have done differently if he had considered the x-ray results. For this inquiry, the actions of the Appeals Council would have been immaterial. The administrative law judge would have been acting as the fact-finder, a role foreign to the Appeals Council in the regulatory framework. As a result, the Appeals Council's denial of review does not reflect harmlessness.

Without the post-hearing data, the administrative law judge relied in part on a spinal x-ray which had indicated only "mild" narrowing of the sacroiliac joints, "slight" marginal sclerosis, and "no evidence of erosive manifestations." Rec. at p. 22. These indications led the administrative law judge to find an ability to occasionally lift or carry 20 pounds,

frequently lift or carry 10 pounds, and walk 6 hours in an 8-hour workday. *Id.* at p. 21. With the post-hearing x-rays, the assessment might have been different.

The administrative law judge apparently could not compare the x-rays because he did not know about the later ones. *See supra* pp. 3-4. The more recent x-rays showed retrolisthesis and osteopythic lipping of the cervical spine, leading Virginia Garrison, M.D. to find "[d]isc disease at the level of C-5-C6, with possible spinal stenosis." Rec. at p. 283.

The results could have affected the outcome because "retrolisthesis may . . . give rise to acquired spinal stenosis with resultant nerve root compression." Jean Oliver & Alison Middleditch, *Functional Anatomy of the Spine* 216 (1991). And compression of the nerve root can result in severe pain, with diminution of muscle power and reflexes.[7] Thus, retrolisthesis or osteopythic lipping could have affected the administrative law judge's assessment of Ms. Parrish's ability to lift or carry objects.[8]

The administrative law judge did not mention the post-hearing x-rays, the osteophytic lipping, or the possibility of spinal stenosis. As a result, the Court cannot possibly know how

---

[7] Two medical authorities have stated: "Acute nerve root pain is severe and is often described as sickening, lancinating, burning. . . . The pain may be accompanied by paraesthesiae, neurological signs of alterod skin sensation, reduced muscle power and absent or diminished reflexes." Jean Oliver & Alison Middleditch, *Functional Anatomy of the Spine* 221 (1991).

[8] *See Brown v. Barnhart*, 325 F. Supp. 2d 1265, 1271 (N.D. Alab. 2004) ("Significant, egregious omissions from the [administrative law judge's] decision are the findings in Dr. Romeo's radiological evaluation (x-ray of lumbosacral spine) showing osteophytic lipping of the anterior bodies and narrowing of the L5-S1 disk space.").

the administrative law judge would have reacted if he had known about the post-hearing x-ray results. In these circumstances, reversal is necessary.

II.     OPINIONS BY CONSULTATIVE EXAMINERS

In August 2004 and March 2005, Ms. Parrish underwent consultative examinations by Dr. Jacob Oommen and Dr. Terry Jones. *See* Rec. at pp. 234-37, 250-53. As argued by the Plaintiff, the administrative law judge selectively omitted relevant portions of both physicians' reports.

On examination, Doctors Oommen and Jones concluded that Ms. Parrish had:

- mild or moderate difficulty getting on and off the examining table,

- moderate difficulty with heel and toe walking, and

- severe difficulty squatting and rising from a sitting position.

*Id.* at pp. 237, 252. These observations could reflect evidence of significant motor loss.[9]

---

[9] The administrative law judge did not include motor loss in the RFC assessment and held that Ms. Parrish lacked the "motor deficits" required under Listing 1.04. Rec. at pp. 20-21. But the administrative law judge could have inferred significant deficits in motor skills from the observations of Doctors Oommen and Jones, as the regulations provided:

> Observations of the individual during the [orthopedic and neurologic] examination should be reported; e.g., how he or she gets on and off the examining table. Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(E) (2006).

Dr. Oommen also found limited straight leg raising,[10] which suggests limited flexion in standing.[11] Dr. Jones added that Ms. Parrish had a moderately impaired gait. *Id.* at p. 253.

The administrative law judge noted some findings made by both doctors,[12] but did not discuss their assessment of limitations in getting on and off the table, heel and toe walking, squatting, rising from a seated position, or gait. This sort of unexplained reliance on selected portions of a doctor's opinion constitutes legal error.

In *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), an examining doctor assessed the plaintiff's mental RFC. *See Haga v. Astrue*, 482 F.3d at 1207. The doctor concluded that the claimant had suffered from several moderate limitations. *Id.* The administrative law judge's RFC assessment reflected some of the limitations, but not others. As a result, the Tenth Circuit Court of Appeals concluded "that the [administrative law judge] should have explained why he [had] rejected four of the moderate restrictions on [the physician's] RFC assessment while appearing to adopt the others." *Id.* at 1208 (citation omitted).

---

[10]   Rec. at p. 236.

[11]   One authority commented: "When a limitation of straight-leg-raising is found, there is always a restriction of flexion in standing as well. It is virtually impossible to have a limitation of straight-leg-raising and be able to flex pelvis and lumbar spine in a normal fashion." R.A. McKenzie, *The Lumbar Spine: Mechanical Diagnosis and Therapy* 118 (1981).

[12]   The judge noted that Dr. Oommen had found a full range of motion of the lumbar spine and both knees, no evidence of erosive manifestations, normal findings from an x-ray of the right knee, and only mildly narrowed sacroiliac joints and slight marginal scoliosis. Rec. at p. 22; *see id.* at pp. 236-37. The judge also commented on Dr. Jones' findings that Ms. Parrish had a full range of motion of all joints tested and no indications of parspinous muscle spasm. *Id.* at p. 22; *see id.* at p. 253.

*Haga* compels reversal and remand. As in *Haga*, the administrative law judge adopted some of the findings assessed by Doctors Oommen and Jones. But without explanation, the judge failed to address limitations which undoubtedly affected Ms. Parrish's ability to walk, sit, and stand. The *Haga* court held that such selectivity constitutes error,[13] and the same is true here.[14]

The Commissioner presents three arguments in defense of the administrative law judge's treatment of the consultative examiners' findings, but none of the arguments have merit.

First, Mr. Astrue argues that the judge had addressed some of Dr. Oommen's findings and included postural limitations in the RFC assessment. While the RFC assessment did limit the Plaintiff to "occasional" stooping, the judge stated that Ms. Parrish could frequently balance, kneel, crouch, and crawl, and that she could stand, walk, and sit for 6 hours in an 8-hour workday. Rec. at p. 21. As stated above, the judge did not comment on the consultative physicians' findings concerning Ms. Parrish's limitations in getting on and off a table, heel and toe walking, rising from a seated position, or gait. The omissions constituted error under *Haga v. Astrue*. *See supra* pp. 8-9.

---

[13]   *See supra* p. 8.

[14]   *See Frantz v. Astrue*, 509 F.3d 1299, 1303-1304 (10th Cir. 2007) (reversing for reconsideration of RFC evidence under *Haga* when the administrative law judge had discussed some of the limitations identified by a doctor, but had omitted others without explanation).

Second, the Defendant contends that the administrative law judge acknowledged Dr. Jones' observation that the Plaintiff had "show[n] some difficulty with orthopedic maneuvers" and that the comment excused further discussion of Dr. Oommen's findings. The Defendant is wrong.

The judge commented: "Even though the claimant showed some difficulty with orthopedic maneuvers, she used no assistive device at the examination and there was no asymmetrical reflex, sensory or motor deficit noted." Rec. at p. 22. The comment indicates that Ms. Parrish had no difficulty in ambulation.

This conclusion would have been difficult to reconcile with parts of the reports that the judge declined to discuss. For example, although the judge did not note the existence of motor deficits, one could regard the difficulties in getting on and off the table, heel and toe walking, squatting, and rising from a seated position as evidence of significant motor loss. *See supra* p. 7. And Dr. Jones expressly found moderate impairment of Ms. Parrish's gait. *See supra* p. 8. The administrative law judge's characterization of the orthopedic difficulties highlights the impact of the observations that went unnoticed in the written decision.

Third, the Defendant argues that while both doctors found severe difficulty in the ability to squat and hop, none of the jobs identified by the vocational expert required these abilities. The implication is that the judge's failure to discuss these limitations was harmless. Even if the Defendant were correct, the judge still failed to discuss medical findings which

could suggest significant motor loss, limited flexion in standing, and impaired gait. *See supra* pp. 7-8.

The Defendant relies on four job codes in the Dictionary of Occupational Titles: Nos. 209.587-034, 209.687-026, 209.567-014, and 237.367-046.

Two of these jobs - "Marker" and "Mail Clerk" - require significant walking or standing,[15] which might have been ruled out if the administrative law judge had considered the medical conclusions suggesting motor loss, limited flexion when standing, and impaired gait. *See supra* pp. 7-9.

For the two remaining jobs - "Telephone Quotation Clerk" and "Order Clerk, Food and Beverage" - the Dictionary of Occupational Titles does not state whether the ability to perform would be limited by significant motor loss or moderate gait impairment.[16] But even if the Plaintiff could have performed the two jobs, the Court could not regard the error involving the "Marker" and "Mail Clerk" jobs as harmless.

As noted above, an error can only be considered harmless if the Court could confidently say that no reasonable administrative factfinder would have reached a contrary conclusion with the correct analysis. *See supra* p. 5. Thus, here the issue would be whether

---

[15] Dictionary of Occupational Titles 209.587-034, 1991 WL 671802 (4th rev. ed. 1991) ("Marker"); Dictionary of Occupational Titles 209.687-026, 1991 WL 671813 (4th rev. ed. 1991) ("Mail Clerk").

[16] *See* Dictionary of Occupational Titles 237.367-046, 1991 WL 672194 (4th rev. ed. 1991) ("Telephone Quotation Clerk"); Dictionary of Occupational Titles 209.567-014, 1991 WL 671794 (4th rev. ed. 1991) ("Order Clerk, Food and Beverage").

the administrative law judge would have been compelled to find the "Telephone Quotation Clerk" and "Order Clerk, Food and Beverage" jobs as sufficiently numerous even without consideration of the jobs as a "Marker" or "Mail Clerk."

To determine whether the jobs were sufficiently numerous, the administrative law judge would have had to consider multiple factors, including the level of the disability, the reliability of the vocational expert's testimony, the distance that Ms. Parrish could travel to work, the isolated nature of the jobs, the type of work involved, and the availability of the work. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Applying these factors, an administrative factfinder could have declined to find the jobs as a "Telephone Quotation Clerk" and "Order Clerk, Food and Beverage" sufficiently numerous in themselves to reject the disability claim.

According to the vocational expert, 3420 jobs existed in Wichita as a "Telephone Quotation Clerk" and "Order Clerk, Food and Beverage." Rec. at p. 319.[17] But Ms. Parrish stated that she did not drive because of her knee weakness and inability to sit in one spot. *See id.* at p. 120. In light of this statement, the Court cannot gauge whether the administrative law judge would have regarded Ms. Parrish as sufficiently mobile to take one of the 3420 jobs referenced by the vocational expert. In these circumstances, the Court could not regard the error as harmless.

---

[17]  When the Plaintiff applied for benefits, she resided in Wichita, Kansas. *See* Rec. at p. 82.

ERROR AFFECTING THE DENIAL OF
SUPPLEMENTAL SECURITY INCOME BENEFITS:
CONSIDERATION OF PHYSICAL THERAPY RECORDS

Ms. Parrish attended physical therapy from March to December 2004.  *See* Rec. at pp. 92-233.[18]  The administrative law judge failed to discuss material records of this treatment, and the error requires reversal of the decision to deny supplemental security income.

The administrative law judge remarked about the apparent pain control from physical therapy.  *Id.* at p. 22.  In making the remark, however, the judge failed to discuss significant evidence from the physical therapist.

In March 2004, the therapist could not fully assess strength because Ms. Parrish had "increased pain with any upper extremity exertion and movement of arms overhead." *Id.* at p. 228.  The therapist also noted:

- altered sensation in the Plaintiff's right arm, leg, shoulder, and mid-back,

- ambulation with an altered gait and limp on the right side, and

- standing with "an increased lordotic curve and increased kyphosis with a right convexity of the thoracic and left lumbar convexity."

*Id.*

---

[18]   The disability period expired on July 31, 2003, and Ms. Parrish would have had to establish a disability by that date to show entitlement to widow's disability insurance benefits.  *See Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360 (10th Cir. 1993).  The physical therapy records post-dated the expiration of the Plaintiff's insurance coverage.  *See supra* text accompanying note; *infra* pp. 13-14.  The Court need not decide whether the failure to discuss the physical therapy records would affect the denial of widow's insurance benefits.  That determination is erroneous on other grounds.  *See supra* pp. 2-12.

In June 2004, the physical therapist noted an "asymmetric gait," "altered posture alignment," and "altered functional mobility," which caused limitations in the areas of "forward bending tasks as well as sitting [and] standing." *Id.* at p. 215.

In December 2004, physical therapy records reflected intermittent back and knee pain. *Id.* at p. 212.

Reasons may have existed for the administrative law judge to discount the physical therapist's conclusions. But none were provided in the decision.

The Commissioner argues that the omission should be excused because the administrative law judge relied on findings by an agency doctor, who in turn had reviewed the pertinent records. This argument should be rejected. The administrative law judge did give "substantial weight" to the agency physician's opinion,[19] but that doctor never stated that he had reviewed the physical therapist's records.[20]

The administrative law judge should have discussed the physical therapy records,[21] and his error in failure to do so was material because the therapist had noted functional

---

[19]   Rec. at p. 21.

[20]   *See* Rec. at pp. 259-66. The Commissioner asserts in his brief that the agency physician had reviewed the physical therapist's notes. For this assertion, the Commissioner does not provide any citation and no support exists in the record.

[21]   *See Lohse v. Shalala*, 28 F.3d 113, 1994 WL 263699, Westlaw op. at 5-6 (10th Cir. June 16, 1994) (unpublished op.) (stating that the administrative law judge should have discussed a physical therapist's report concerning the plaintiff's physical abilities relevant to his ability to perform past relevant work); *accord Lauer v. Apfel*, 169 F.3d 489, 493-94 (7th Cir. 1999) (stating that the administrative law judge should have discussed a physical therapist's comments).

limitations in walking, sitting, standing, and bending forward. These limitations could have affected the administrative law judge's RFC assessment.

## THE PLAINTIFF'S REMAINING CONTENTION

The Plaintiff also argues that the administrative law judge had lacked substantial evidence for his RFC determination. But the Court cannot evaluate this allegation because the judge had failed to discuss x-ray results, material records of physical therapy, and opinions by Doctors Oommen and Jones. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213-14 (10th Cir. 2001) (stating that a reviewing court cannot meaningfully evaluate a decision when the administrative law judge had failed to explain the basis for his findings). Until the administrative law judge makes the necessary findings regarding this evidence, the Court cannot determine whether the RFC determination was supported by substantial evidence.

## RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The Court should reverse and remand for further proceedings.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1) (2000). The deadline for objections is December 9, 2008. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised

for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The referral is terminated.

Entered this 19th day of November, 2008.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge